ORIGINAL

ROBERT A. ZEAVIN (State Bar No. 73273)
STEEFEL, LEVITT & WEISS
A Professional Corporation
550 South Hope Street, Suite 2350
Los Angeles, CA 90071-2650
Telephone:    (213) 599-3400
Facsimile:    (213) 599-3450
Email:        rzeavin@steefel.com

AMY B. BRIGGS (State Bar No. 194028)
KELLY L. KNUDSON (State Bar No. 244445)
STEEFEL, LEVITT & WEISS
A Professional Corporation
One Embarcadero Center, 30th Floor
San Francisco, CA 94111-3719
Telephone:    (415) 788-0900
Facsimile:    (415) 788-2019
Email:        abriggs@steefel.com
              kknudson@steefel.com

FILED
08 JAN -7 PM 3: 43
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____
DEPUTY

'08 CV 0038 JAH BLM

Attorneys for Plaintiff LPL FINANCIAL
CORPORATION, formerly known as LINSCO/PRIVATE
LEDGER CORP.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LPL FINANCIAL CORPORATION, formerly known as LINSCO/PRIVATE LEDGER CORP., <br><br> Plaintiff, <br><br> v. <br><br> FIDELITY AND DEPOSIT COMPANY OF MARYLAND, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; AND DECLARATORY RELIEF** <br><br> **JURY TRIAL DEMANDED** <br><br> **BY FAX** |

Plaintiff LPL Financial Corporation, formerly known as Linsco/Private Ledger Corp. ("Plaintiff" or "LPL") alleges against defendant Fidelity and Deposit Company of Maryland ("F&D") as follows:

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350 · LOS ANGELES, CA 90071-2650
Telephone: (213) 599-3400 · Facsimile: (213) 599-3450

COMPLAINT

1

## INTRODUCTION

1.    This lawsuit arises out of F&D's wrongful denial of coverage in connection with loss sustained by LPL as a direct result of Kevin Forrester's fraud and other dishonest conduct. Because LPL's loss clearly falls within the insuring agreement of Financial Institution Bond No. FIB 0001647 03 issued by F&D, and because F&D has denied coverage for the Forrester loss in its entirety, LPL brings suit to obtain the benefits owed to it (in excess of $1 million). But LPL's losses are not limited to those caused by Forrester alone. Rather, over the last two years, LPL has discovered that it has sustained losses in excess of $8 million caused by the fraud and dishonest conduct of four or more other financial advisors in their capacities as LPL Registered Representatives and agents. To date, however, F&D has paid only $50,000 of the losses in question.

Accordingly, LPL seeks not only to be reimbursed in full for the losses it has sustained as a result of the financial advisors' misconduct, but also seeks to recover attorney's fees and costs as expressly allowed under California law.

Finally, LPL will ask the jury to assess punitive damages against F&D for its mishandling of LPL's claims, which includes (1) failing to promptly and reasonably investigate the losses; (2) failing to reasonably interpret its own insurance policy; (3) relying on inapposite legal authority to create a pretext for denying coverage; (4) failing to promptly communicate with its insured as required under the California Fair Claims Settlement Practices Act; and (5) accepting coverage and reimbursing LPL for a nearly identical – but much smaller – loss.

## THE PARTIES

2.    Prior to December 2005, LPL was a corporation duly organized and existing pursuant to the laws of California with its principal places of business in San Diego, California and Boston, Massachusetts. In December 2005, LPL was incorporated under Delaware law. At all material times, LPL was authorized to transact business in the state of California.

3.    LPL formerly did business as Linsco/Private Ledger Corp. As of January 1, 2008, however, Linsco/Private Ledger Corp. changed its name to LPL Financial Corporation. The name change is for branding purposes only.

COMPLAINT

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350 · LOS ANGELES, CA 90071-2650
Telephone: (213) 599-3400 · Facsimile: (213) 599-3450

4.    Defendant F&D is, and at all material times was, a corporation duly organized and existing pursuant to the laws of Maryland with its principal place of business in Illinois.  At all material times herein, F&D was authorized to transact business in the state of California.

## STATUTORY JURISDICTION AND VENUE

5.    This Court has original subject matter jurisdiction for this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) in that the dispute is between citizens of different states and the amount in controversy exceeds $75,000.

6.    Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.  Venue is proper in this district in that the defendant is subject to the personal jurisdiction of this Court as of the date of the filing of this complaint.

## FACTUAL ALLEGATIONS

7.    This lawsuit involves an insurance coverage dispute regarding a financial institution bond purchased by LPL.

8.    LPL is a clearing broker/dealer registered with FINRA and the SEC as well as an investment adviser registered with the SEC.

9.    LPL is also a member of the Boston Stock Exchange.

10.    It does not offer its own investment products.  Rather, LPL principally transacts business as an agent for independent financial advisors as well as financial institutions employing financial advisors.

11.    LPL has an independent sales force of approximately 11,000 financial advisors operating in all fifty states, although LPL itself is headquartered in San Diego, California and Boston, Massachusetts.

12.    LPL's business model provides financial advisors with greater degrees of flexibility and independence than most broker/dealers.  Accordingly, LPL generally attracts and contracts with experienced and sophisticated financial advisors, who have developed a client base on their own and seek to enhance their platform through their affiliation with LPL.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350 · LOS ANGELES, CA  90071-2650
Telephone: (213) 599-3400 · Facsimile: (213) 599-3450

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350   LOS ANGELES, CA  90071-2650
Telephone: (213) 599-3400   Facsimile: (213) 599-3450

13.   LPL thus provides its independent financial advisors with access to individual securities and forms alliances with the providers of investment and insurance products, including but not limited to mutual funds, annuities, and domestic and foreign securities.

14.   In exchange for the financial advisors' sale of various investment products, LPL paid them a portion of the total commission earned on such sale as set forth in the Representative Agreement that each financial advisor entered into with LPL.

### Kevin T. Forrester

15.   Kevin T. Forrester ("Forrester") was an independent financial advisor registered with LPL from December 16, 2004 through October 10, 2006.

16.   On December 16, 2004, Forrester entered into a Representative Agreement with LPL.

17.   The Representative Agreement appointed Forrester "as a limited agent" to solicit purchases of securities and investments and products and services offered through Linsco/Private Ledger in its capacities as a broker/dealer and investment adviser, respectively.

18.   While acting as agent for LPL, Forrester agreed that "all checks from customers shall be made payable to Linsco/Private Ledger or to the underwriter, investment company or insurance company designated by Linsco/Private Ledger in connection with the transactions."  Forrester was prohibited from accepting cash payments from customers at any time.

19.   Forrester also agreed not to "mail any correspondence, make any communication or use any advertising" that has not been approved in advance by LPL.

20.   Accordingly, per the terms of the Representative Agreement and standard industry practice, Forrester sought and obtained approval from LPL to conduct his securities business as "Forrester Financial Group."

21.   While holding himself out as an LPL registered representative, Forrester, under the LPL-approved d/b/a of "Forrester Financial Group" – misappropriated funds totaling over $1.5 million from various customers by selling a fictitious investment with a purported guaranteed rate of return.

COMPLAINT

22. Upon obtaining money from customers, Forrester converted it for his own personal use.

23. In some instances, Forrester sent various customers falsified account statements purportedly reflecting the value of their fictitious investment.

24. After receiving notification of a customer's complaint, LPL conducted an investigation into Forrester's activities and discovered that Forrester had misappropriated over $1 million from LPL.

25. As of the date of the filing of this complaint, LPL has provided restitution to and negotiated settlements with customers for Forrester's misappropriation of funds totaling $1,338,781.86.

## The Financial Institution Bond

26. FINRA Rule 3020 requires LPL to maintain a bond protecting against precisely the type of fidelity losses caused by Forrester.

27. Accordingly, LPL – through its San Diego, California broker Barney & Barney, obtained  Financial Institution Bond no. FIB 0001647 03 for the three year period, commencing January 15, 2005 (the "Bond") from F&D.

28. F&D had previously insured LPL against fidelity losses since January 1996.

29. The Bond provides up to $7,500,000 of insurance coverage for a single covered loss and $15,000,000 of aggregate liability for each bond year.

30. The Bond's Insuring Agreement provides, in relevant part:

> The Underwriter, in consideration of an agreed premium, and in reliance upon all statements made and information furnished to the Underwriter by the Insured in applying for this bond, and subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations and other terms hereof, agrees to indemnify the Insured for:
>
> (A) Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting along or in collusion with others.
>
> Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350 · LOS ANGELES, CA 90071-2650
Telephone: (213) 599-3400   Facsimile: (213) 599-3450

COMPLAINT                                                                          5

(a) to cause the Insured to sustain such loss; and

(b) to obtain financial benefit for the Employee or another person or entity

31. Section 10 of the Bond entitled "Ownership" provides:

This bond shall apply to loss of Property (1) owned by the Insured, (2) held by the Insured in any capacity, or (3) for which the Insured is legally liable.

### F&D's Handling of the Claim

32. LPL suffered a direct loss within the meaning of the Bond due to Forrester's misappropriation, which misappropriation constitutes a dishonest and fraudulent series of acts.

33. Forrester acted with the manifest intent to cause LPL such direct loss and at all times relevant herein was an "Employee" of LPL as defined in the Bond.

34. As evidenced by his conversion of funds to his own use, Forrester committed such dishonest acts in order to obtain a financial benefit for himself.

35. Accordingly, LPL timely tendered its claim seeking coverage for its losses associated with Forrester's misappropriation of LPL customer funds on April 26, 2007 (claim no. 638 0044659).

36. F&D – a member company of Zurich North America – "investigated" the loss for over six months.

37. Notwithstanding that the loss falls squarely within the Bond's insuring agreement, on November 9, 2007, F&D denied LPL's claim no. 638 0044659 in its entirety.

38. LPL has attempted to resolve the coverage dispute with F&D informally. Such efforts include conference calls in which F&D was informed that the cases it relied upon in denying the Forrester loss were not even remotely applicable.

39. On or about November 28, 2007, F&D represented to LPL that it would retain coverage counsel to review F&D's denial of the Forrester loss.

40. To date, F&D has failed to engage in any further communication with LPL regarding the Forrester loss, despite attempts by LPL to continue dialogue.

COMPLAINT

6

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350 · LOS ANGELES, CA 90071-2650
Telephone: (213) 599-3400 · Facsimile: (213) 599-3450

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350 · LOS ANGELES, CA 90071-2650
Telephone: (213) 599-3400 · Facsimile: (213) 599-3450

41.    The unreasonableness of F&D's denial of the Forrester loss is further highlighted by its conduct in investigating – and ultimately paying – LPL for a loss sustained as a result of another financial advisor's fraud.

42.    In September 2006, LPL financial advisor Frank Peperno was discovered to have misappropriated funds from customers in a nearly identical (but unrelated) scheme.

43.    LPL reimbursed those whom Peperno had defrauded through the sale of fictitious investments and tendered the Peperno loss to F&D under the Bond on or about November 26, 2006.

44.    The Peperno loss, however, totaled only $50,000 after application of the $250,000 deductible under the Bond.

45.    Accordingly, on or about July 23, 2007, F&D paid LPL for the Peperno loss in its entirety.

46.    Both the Peperno and Forrester claims were handled and investigated by Teresa Jones, claims counsel for F&D.

### Other Losses

47.    In addition to the Forrester and Peperno losses described above, LPL has also tendered additional losses caused by the dishonest acts of other financial advisors such as Michael McClellan, Dennis Martin, Kyle Keesling and Robert Loffredi.

48.    These additional losses also fall squarely within the insuring agreement of the Bond, as quoted above.

49.    LPL has already sustained loss in excess of $8 million.

50.    LPL was informed by F&D that F&D is preparing to deny coverage for some or all of the amounts claimed for these other losses as well, and, accordingly, seeks a declaration of its rights and obligations under the Bond.

### FIRST CAUSE OF ACTION

### (Breach of Contract)

51.    LPL incorporates the allegations contained in paragraphs 1 through 50, above, as though fully set forth herein.

COMPLAINT

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350 · LOS ANGELES, CA 90071-2650
Telephone: (213) 599-3400 · Facsimile: (213) 599-3450

1        52.     For the three year period commencing January 15, 2005, LPL was insured

2   under the Bond, attached as <u>Exhibit 1</u> and incorporated by this reference.

3        53.     By the terms of the Bond, LPL was to pay a premium in consideration for

4   F&D's promise to provide LPL with a financial institution bond providing up to $7,500,000 of

5   coverage for, *inter alia*, fidelity loss.

6        54.     LPL performed all promises, covenants and conditions under the Bond.

7        55.     On or about November 9, 2007 and continuing to this day, F&D breached

8   its contract with LPL by denying the Forrester loss in its entirety.

9        56.     As a direct and proximate result of F&D's conduct, this breach of contract

10   has damaged LPL, in that LPL, despite maintaining the Bond expressly providing coverage for

11   the type of loss incurred, has been denied coverage for all actual loss arising from this expressly

12   covered risk.

13        57.     As a result, LPL has been required to pay substantial sums in investigating

14   and responding to the loss, and has been required to retain an attorney and incur attorneys' fees

15   and costs which, pursuant to California law, it is entitled to recover in this action.  LPL now seeks

16   the recovery of its actual losses and damages in an amount that exceeds the jurisdictional

17   minimum of this Court, and which will be established according to proof at trial, as well as its

18   attorneys' fees and costs incurred to obtain the benefits under the Bond.

19   **SECOND CAUSE OF ACTION**

20   **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

21        58.     LPL realleges the matters set out in paragraphs 1 through 57, inclusive, as

22   though fully set forth herein.

23        59.     Implied in every contract is a covenant of good faith and fair dealing

24   whereby each party covenants that it shall not do anything which will have the effect of

25   destroying or injuring the right of the other party to receive the fruits of the agreement.

26        60.     Pursuant to the Bond, F&D was to provide LPL with up to $7,500,000 of

27   coverage for loss not expressly excluded by the Bond.

28

COMPLAINT

61.    In addition to the implied covenant, as a direct result of the special nature of the Bond, F&D's duties to LPL, and the special nature of the insurer-insured relationship, special circumstances existed which also give rise to the covenant of good faith and fair dealing, with regard to the manner and methods by which F&D handled LPL's insurance claim and interpreted the Bond.

62.    Pursuant to this covenant, F&D had and continues to have an obligation to exercise its business judgment and discretion in handling LPL's claim in good faith, within LPL's reasonable expectations, and to refrain from conduct which would deprive LPL of the benefits to which it is entitled under the Bond.

63.    Moreover, under well settled principles of California law, F&D was obligated to consider their insured's interests at least as much as their own, if not more so.

64.    F&D's acts and/or omissions breached the implied covenant to deal fairly and in good faith. Specifically, but without limitation, F&D breached the covenant of good faith and fair dealing by refusing to pay all actual losses incurred by a covered peril under the Bond in a timely fashion, and by ignoring evidence supporting the existence of coverage and selectively reviewing the evidence before it.

65.    As a direct and proximate result of F&D's breaches of the implied covenant of good faith and fair dealing, LPL has suffered damages in an amount that exceeds the jurisdictional minimum of this Court.

### THIRD CAUSE OF ACTION

### (Declaratory Relief)

66.    LPL repeats and realleges as if fully set forth herein all of the allegations contained in paragraphs 1 though 65.

67.    LPL contends that there is coverage under the terms of the Bond for payment of losses arising from the misappropriation of LPL funds by various financial advisors.

68.    LPL desires a judicial determination and declaration of its rights and obligations under the Bond, specifically that it is entitled to insurance coverage for the damage at

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
550 SOUTH HOPE STREET, SUITE 2350   LOS ANGELES, CA 90071-2650
Telephone: (213) 599-3400   Facsimile: (213) 599-3450

COMPLAINT                                                                 9

1    issue and set forth in its proofs of loss, and that F&D has improperly and illegally denied LPL

2    coverage under the Bond.

3          69.    Such a declaration is necessary and proper at this time so that LPL may

4    ascertain its rights and obligations under the Bond.

5          WHEREFORE, LPL prays judgment as hereinafter set forth:

6          1.    That LPL receive a declaration and order of the Court that LPL is entitled

7    to receive from F&D under the Bond the full amount of actual losses sustained from the financial

8    advisors' misappropriations as set forth in LPL's claim;

9          2.    That LPL recover such actual damages as the Court shall find LPL to have

10   sustained, including payments to LPL customers to reimburse them for the financial advisors'

11   misappropriations;

12         3.    That LPL recover exemplary or punitive damages as the law shall permit

13   and is to be determined by the trier of fact;

14         4.    That LPL recover its costs of suit herein, as well as its reasonable

15   attorneys' fees pursuant to the relevant statutory and case law;

16         5.    That LPL recover prejudgment interest to the full extent allowed by law

17   and or equity commencing from the date of F&D's declination of coverage; and

18         6.    For any other relief this Court deems just and proper.

19   Dated: January 7, 2008              STEEFEL, LEVITT & WEISS
                                         A Professional Corporation
20

21

22   By: _____
                                         Robert A. Zeavin
23                                       Attorneys for Plaintiff LPL Financial
                                         Corporation, formerly known as Linsco/Private
24                                       Ledger Corp.

25   21489:6629791.4

26

27

28

COMPLAINT                                                                              10

# EXHIBIT A

**The F&D Companies**

02/04/2005 08:55 **FINANCIAL INSTITUTION BOND**

Standard Form No. 14
Revised to October, 1987

Home Office
P.O. Box 1227
Baltimore, MD 21203

This bond issued by:

☒ Fidelity and Deposit Company of Maryland
P.O. Box 1227
Baltimore, MD 21203

☐ Colonial American Casualty and Surety Company
P.O. Box 1227
Baltimore, MD 21203

(stock insurance companies, herein called the Underwriter)

Bond No. ___FIB 0001647 03___

## DECLARATIONS

**Item 1.** Name of Insured (herein called Insured): LPL Holdings, Linsco/Private Ledger Corp. and Independent Advisors Group Corporation

Principal Address: 9785 Towne Centre Drive

| No. | Street |
| --- | --- |

San Diego, California 92121

| City | State |
| --- | --- |

**Item 2.** Bond Period: from 12:01 a.m. on  1-15-05  to 12:01 a.m. on  1-15-08
standard time.  (MONTH, DAY, YEAR)  (MONTH, DAY, YEAR)

**Item 3.** The Aggregate Liability of the Underwriter during the Bond Period shall be
$ See Rider F3626a
(Insert Amount)

**Item 4.** Subject to Sections 4 and 11 hereof,
the Single Loss Limit of Liability is $ 7,500,000
(Insert Amount)

and the Single Loss Deductible is $ 250,000
(Insert Amount)

Provided, however, that if any amounts are inserted below opposite specified Insuring Agreements or Coverage, those amounts shall be controlling. Any amount set forth below shall be part of and not in addition to amounts set forth above. (If an Insuring Agreement or Coverage is to be deleted, insert "Not Covered".)

| Amount applicable to: | Single Loss Limit of Liability | Single Loss Deductible |
| --- | --- | --- |
| Insuring Agreement (D) - FORGERY OR ALTERATION | $ 7,500,000 | $ 250,000 |
| Insuring Agreement (E) - SECURITIES | $ 7,500,000 | $ 250,000 |
| Coverage on Partners | $ NOT COVERED | $ NOT COVERED |
| Optional Insuring Agreements and Coverages: | $ SEE ATTACHED SCHEDULE A | $ |

If "Not Covered" is inserted above opposite any specified Insuring Agreement or Coverage, such Insuring Agreement or Coverage and any other reference thereto in this bond shall be deemed to be deleted therefrom.

**Item 5.** The liability of the Underwriter is subject to the terms of the following riders attached hereto:
Rider A, Rider B, Rider C, Rider D, F3626a, SR5083c, SR5862, SR5969a, SR6139a, SR6196

**Item 6.** The Insured by acceptance of this bond gives notice to the Underwriter terminating or canceling prior bond(s) or policy(ies) No.(s)  FIB 0001647 02
such termination or cancelation to be effective as of the time this bond becomes effective.

Countersigned by: _____

Authorized Representative

F4725b
Financial Institution Bond, Standard Form No. 14

Page 1 of 3

Rec. 1/3/05

02/04/2005 08:55 AM


F&D
Companies

### SCHEDULE A

Home Office
P.O. Box 1227
Baltimore, MD 21203

To be attached to Bond No. FIB 0001647 03

| Optional Insuring Agreements and Coverages | Single Loss Limit of Liability | | Single Loss Deductible | |
|---|---|---|---|---|
| Computer Systems Fraud | $ | 7,500,000 | $ | 250,000 |
| Electronic Data Processing | $ | 7,500,000 | $ | 250,000 |
| Claims Expense | $ | 25,000 | $ | 0 |

```
-------------------------------------------------------------------------
                                           THE FIDELITY AND DEPOSIT COMPANIES
----02/04/2005 08:55 AM-----------------------------------------------
                                                      BILL FOR PREMIUM
-------------------------------------------------------------------------
```

POLICY NUMBER:   FIB 0001647 03

LPL HOLDINGS
9785 TOWNE CENTRE DRIVE

SAN DIEGO, CA                092121

BRANCH OFFICE:   LOS ANGELES                EFFECTIVE DATE:  01/15/2005

AGENT NUMBER:    0129219                    EXPIRATION DATE:  01/15/2008

AGENT NAME AND ADDRESS:  BARNEY & BARNEY
                         9171 TOWNE CENTRE DR STE 200
                         PO BOX 85638
                         SAN DIEGO          CA        092186


                         ZERO COMMISSION ITEMS


          THERE ARE NO ZERO COMMISSION ITEMS FOR THIS POLICY.


                         COMMISSIONED PREMIUMS

           PREMIUM          COMMISSION        COMMISSION AMOUNT

        $454,130.00           0.14000            $63,578.20


     TOTAL PREMIUM FOR THIS   RENEWAL     IS          $454,130.00

**Exhibit A-3**
**Page 3**

**02/04/2005 08:55 AM**

The Underwriter, in consideration of an agreed premium, and in reliance upon all statements made and information furnished to the Underwriter by the Insured in applying for this bond, and subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations and other terms hereof, agrees to indemnify the Insured for:

## INSURING AGREEMENTS

### FIDELITY

(A)  Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.

Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:

(a)  to cause the Insured to sustain such loss; and

(b)  to obtain financial benefit for the Employee and which, in fact, result in obtaining such benefit.

As used in this Insuring Agreement, financial benefit does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

### ON PREMISES

(B) (1)  Loss of Property resulting directly from

(a)  robbery, burglary, misplacement, mysterious unexplainable disappearance and damage thereto or destruction thereof, or

(b)  theft, false pretenses, common-law or statutory larceny, committed by a person present in an office or on the premises of the Insured,

while the Property is lodged or deposited within offices or premises located anywhere.

(2)  Loss of or damage to

(a)  furnishings, fixtures, supplies or equipment within an office of the Insured covered under this bond resulting directly from larceny or theft in, or by burglary or robbery of, such office, or attempt thereat, or by vandalism or malicious mischief; or

(b)  such office resulting from larceny or theft in, or by burglary or robbery of such office or attempt thereat, or to the interior of such office by vandalism or malicious mischief,

provided that

(i)  the Insured is the owner of such furnishings, fixtures, supplies, equipment, or office or is liable for such loss or damage, and

(ii) the loss is not caused by fire.

### IN TRANSIT

(C)  Loss of Property resulting directly from robbery, common-law or statutory larceny, theft, misplacement, mysterious unexplainable disappearance, being lost or made away with, and destruction thereof, while the Property is in transit anywhere in the custody of

(a)  a natural person acting as a messenger of the Insured (or another natural person acting as messenger or custodian during an emergency arising from the incapacity of the original messenger), or

(b)  a Transportation Company and being transported in an armored motor vehicle, or

(c)  a Transportation Company and being transported in a conveyance other than an armored motor vehicle provided that covered Property transported in such manner is limited to the following:

(i)  records, whether recorded in writing or electronically, and

(ii) Certificated Securities issued in registered form and not endorsed, or with restrictive endorsements, and

### NOMINEES

A. Loss sustained by any nominee organized by the Insured for the purpose of handling certain of its business transactions

(iii) Negotiable Instruments not payable to bearer, or not endorsed, or with restrictive endorsements.

Coverage under this Insuring Agreement begins immediately upon the receipt of such Property by the natural person or Transportation Company and ends immediately upon delivery to the designated recipient or its agent.

### FORGERY OR ALTERATION

(D)  Loss resulting directly from

(1)  Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit;

(2)  transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any financial institution but which instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer or financial institution.

A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

### SECURITIES

(E)  Loss resulting directly from the Insured having, in good faith, for its own account or for the account of others,

(1)  acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of any original

(a)  Certificated Security,

(b)  deed, mortgage or other instrument conveying title to, or creating or discharging a lien upon, real property,

(c)  Evidence of Debt,

(d)  Instruction to a Federal Reserve Bank of the United States, or

(e)  Statement of Uncertificated Security of any Federal Reserve Bank of the United States

which

(i)  bears a signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any person signing in any other capacity which is a Forgery, or

(ii) is altered, or

(iii) is lost or stolen;

(2)  guaranteed in writing or witnessed any signature upon any transfer, assignment, bill of sale, power of attorney, Guarantee, or any items listed in (a) through (e) above;

(3)  acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of any item listed in (a) and (b) above which is a Counterfeit

A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

### COUNTERFEIT CURRENCY

(F)  Loss resulting directly from the receipt by the Insured, in good faith, of any Counterfeit Money of the United States of America, Canada or of any other country in which the Insured maintains a branch office.

## GENERAL AGREEMENTS

and composed exclusively of its Employees shall, for all the purposes of this bond and whether or not any partner of such

## 02/04/2005 08:55 AM

nominee is implicated in such loss, be deemed to be loss sustained by the Insured.

### ADDITIONAL OFFICES OR EMPLOYEES—CONSOLIDATION, MERGER OR PURCHASE OF ASSETS—NOTICE

B. If the Insured shall, while this bond is in force, establish any additional offices, other than by consolidation or merger with, or purchase or acquisition of assets or liabilities of, another institution, such offices shall be automatically covered hereunder from the date of such establishment without the requirement of notice to the Underwriter or the payment of additional premium for the remainder of the premium period.

If the Insured shall, while this bond is in force, consolidate or merge with, or purchase or acquire assets or liabilities of, another institution, the Insured shall not have such coverage as is afforded under this bond for loss which

   (a) has occurred or will occur in offices or premises, or

   (b) has been caused or will be caused by an employee or employees of such institution, or

   (c) has arisen or will arise out of the assets or liabilities acquired by the Insured as a result of such consolidation, merger or purchase or acquisition of assets or liabilities unless the Insured shall

      (i) give the Underwriter written notice of the proposed consolidation, merger or purchase or acquisition of assets or liabilities prior to the proposed effective date of such action and

      (ii) obtain the written consent of the Underwriter to extend the coverage provided by this bond to such additional offices or premises, Employees and other exposures, and

      (iii) upon obtaining such consent, pay to the Underwriter an additional premium.

### CHANGE OF CONTROL—NOTICE

C. When the Insured learns of a change in control, it shall give written notice to the Underwriter.

As used in this General Agreement, control means the power to determine the management or policy of a controlling holding company or the Insured by virtue of voting stock ownership. A change in ownership of voting stock which results in direct or indirect ownership by a stockholder or an affiliated group of stockholders of ten percent (10%) or more of such stock shall be presumed to result in a change of control for the purpose of the required notice.

Failure to give the required notice shall result in termination of coverage for any loss involving a transferee, to be effective upon the date of the stock transfer.

### REPRESENTATION OF INSURED

D. The Insured represents that the information furnished in the application for this bond is complete, true and correct. Such application constitutes part of this bond.

Any misrepresentation, omission, concealment or incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this bond.

### DEFINITIONS

Section 1. As used in this bond:

   (a) Acceptance means a draft which the drawee has, by signature written thereon, engaged to honor as presented.

   (b) Certificate of Deposit means an acknowledgment in writing by a financial institution of receipt of Money with an engagement to repay it.

   (c) Certificated Security means a share, participation or other interest in property of or an enterprise of the issuer or an obligation of the issuer, which is:

      (1) represented by an instrument issued in bearer or registered form;

### JOINT INSURED

E. If two or more Insureds are covered under this bond, the first named Insured shall act for all Insureds. Payment by the Underwriter to the first named Insured of loss sustained by any Insured shall fully release the Underwriter on account of such loss. If the first named Insured ceases to be covered under this bond, the Insured next named shall thereafter be considered as the first named Insured. Knowledge possessed or discovery made by any Insured shall constitute knowledge or discovery by all Insureds for all purposes of this bond. The liability of the Underwriter for loss or losses sustained by all Insureds shall not exceed the amount for which the Underwriter would have been liable had all such loss or losses been sustained by one Insured .

### NOTICE OF LEGAL PROCEEDINGS AGAINST INSURED—ELECTION TO DEFEND

F. The Insured shall notify the Underwriter at the earliest practicable moment, not to exceed 30 days after notice thereof, of any legal proceeding brought to determine the Insured's liability for any loss, claim or damage, which, if established, would constitute a collectible loss under this bond. Concurrently, the Insured shall furnish copies of all pleadings and pertinent papers to the Underwriter.

The Underwriter, at its sole option, may elect to conduct the defense of such legal proceeding, in whole or in part. The defense by the Underwriter shall be in the Insured's name through attorneys selected by the Underwriter. The Insured shall provide all reasonable information and assistance required by the Underwriter for such defense.

If the Underwriter elects to defend the Insured, in whole or in part, any judgment against the Insured on those counts or causes of action which the Underwriter defended on behalf of the Insured or any settlement in which the Underwriter participates and all attorneys' fees, costs and expenses incurred by the Underwriter in the defense of the litigation shall be a loss covered by this bond.

If the Insured does not give the notices required in subsection (e) of Section 5 of this bond and in the first paragraph of this General Agreement, or if the Underwriter elects not to defend any causes of action, neither a judgment against the Insured, nor a settlement of any legal proceeding by the Insured, shall determine the existence, extent or amount of coverage under this bond for loss sustained by the Insured, and the Underwriter shall not be liable for any attorneys' fees, costs and expenses incurred by the Insured.

With respect to any legal proceeding, subsections (b) and (d) of Section 5 of this bond apply upon the entry of such judgment or the occurrence of such settlement instead of upon discovery of loss. In addition, the Insured must notify the Underwriter within 30 days after such judgment is entered against it or after the Insured settles such legal proceeding and, subject to subsection (e) of Section 5, the Insured may not bring legal proceedings for the recovery of such loss after the expiration of 24 months from the date of such final judgment or settlement.

### CONDITIONS AND LIMITATIONS

   (2) of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

   (3) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests or obligations.

   (d) Counterfeit means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

   (e) Employee means

      (1) a natural person in the service of the Insured at any of the Insured's offices or premises covered here-

**02/04/2005** ... who ... compensates directly by salary ... commissions and when the Insured has the right to direct and control while performing services for the Insured;

(2) an attorney retained by the Insured and an employee of such attorney while either is performing legal services for the Insured;

(3) a person provided by an employment contractor to perform employee duties for the Insured under the Insured's supervision at any of the Insured's offices or premises covered hereunder; and a guest student pursuing studies or duties in any of said offices or premises;

(4) an employee of an institution merged or consolidated with the Insured prior to the effective date of this bond;

(5) each natural person, partnership or corporation authorized by the Insured to perform services as data processor of checks or other accounting records of the Insured (not including preparation or modification of computer software or programs), herein called Processor. (Each such Processor, and the partners, officers and employees of such Processor shall, collectively, be deemed to be one Employee for all the purposes of this bond, excepting, however, the second paragraph of Section 12. A Federal Reserve Bank or clearing house shall not be construed to be a processor.) and

(6) a Partner of the Insured, unless not covered as stated in Item 4 of the Declarations.

(f) Evidence of Debt means an instrument, including a Negotiable Instrument, executed by a customer of the Insured and held by the Insured which in the regular course of business is treated as evidencing the customer's debt to the Insured.

(g) Financial Interest in the Insured of the Insured's general partner(s), or limited partner(s), committing dishonest or fraudulent acts covered by this bond or concerned or implicated therein means:

(1) as respects general partners the value of all right, title and interest of such general partner(s), determined as of the close of business on the date of discovery of loss covered by this bond, in the aggregate of:

(a) the "net worth" of the Insured, which for the purposes of this bond, shall be deemed to be the excess of its total assets over its total liabilities, without adjustment to give effect to loss covered by this bond, (except that credit balances and equities in proprietary accounts of the Insured, which shall include capital accounts of partners, investment and trading accounts of the Insured, participations of the Insured in joint accounts, and accounts of partners which are covered by agreements providing for the inclusion of equities therein as partnership property, shall not be considered as liabilities) with securities, spot commodities, commodity future contracts in such proprietary accounts and all other assets marked to market or fair value and with adjustment for profits and losses at the market of contractual commitments for such proprietary accounts of the Insured; and

(b) the value of all other Money, securities and property belonging to such general partner(s), or in which such general partner(s) have a pecuniary interest, held by or in the custody of and legally available to the Insured as set-off against loss covered by this bond;

provided, however, that if such "net worth" adjusted to give effect to loss covered by this bond and such value of all other Money, securities and property as set forth in (g)(1)(b) preceding, plus the amount of coverage afforded by this bond on account of such loss, is not sufficient to enable the Insured to meet its obligations,

including its obligations to its partners other than to such general partner(s), then the Financial Interest in the Insured, as above defined, of such general partner(s) shall be reduced in an amount necessary, or eliminated if need be, in order to enable the Insured upon payment of loss under this bond to meet such obligations, to the extent that such payment will enable the Insured to meet such obligations, without any benefit accruing to such general partner(s) from such payment; and

(2) as respects limited partners the value of such limited partner's(') investment in the Insured.

(h) Forgery means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

(i) Guarantee means a written undertaking obligating the signer to pay the debt of another to the Insured or its assignee or to a financial institution from which the Insured has purchased participation in the debt, if the debt is not paid in accordance with its terms.

(j) Instruction means a written order to the issuer of an Uncertificated Security requesting that the transfer, pledge, or release from pledge of the Uncertificated Security specified be registered.

(k) Letter of Credit means an engagement in writing by a bank or other person made at the request of a customer that the bank or other person will honor drafts or other demands for payment upon compliance with the conditions specified in the Letter of Credit.

(l) Money means a medium of exchange in current use authorized or adopted by a domestic or foreign government as a part of its currency.

(m) Negotiable Instrument means any writing

(1) signed by the maker or drawer

(2) containing any unconditional promise or order to pay a sum certain in Money and no other promise, order, obligation or power given by the maker or drawer; and

(3) is payable on demand or at a definite time; and

(4) is payable to order or bearer.

(n) Partner means a natural person who

(1) is a general partner of the Insured, or

(2) is a limited partner and an Employee (as defined in Section 1 (e) (1) of the bond) of the Insured.

(o) Property means Money, Certificated Securities, Uncertificated Securities of any Federal Reserve Bank of the United States, Negotiable Instruments, Certificates of Deposit, documents of title, Acceptances, Evidences of Debt, security agreements, Withdrawal Orders, certificates of origin or title, Letters of Credit, insurance policies, abstracts of title, deeds and mortgages on real estate, revenue and other stamps, tokens, unsold state lottery tickets, books of account and other records whether recorded in writing or electronically, gems, jewelry, precious metals of all kinds and in any form, and tangible items of personal property which are not hereinbefore enumerated.

(p) Statement of Uncertificated Security means a written statement of the issuer of an Uncertificated Security containing:

(1) a description of the issue of which the Uncertificated Security is a part;

(2) the number of shares or units:

(a) transferred to the registered owner;

(b) pledged by the registered owner to the registered pledgee;

(c) released from pledge by the registered pledgee;

(d) registered in the name of the registered owner on the date of the statement; or

(e) subject to pledge on the date of the statement;

(3) the name and address of the registered owner and registered pledgee;

## 02/04/2005 08:55 AM

(4) a notation of any liens and restrictions of the issuer and any adverse claims to which the Uncertificated Security is or may be subject or a statement that there are none of those liens, restrictions or adverse claims; and

(5) the date:

    (a) the transfer of the shares or units to the new registered owner of the shares or units was registered;

    (b) the pledge of the registered pledgee was registered, or

    (c) of the statement, if it is a periodic or annual statement.

(q) Transportation Company means any organization which provides its own or leased vehicles for transportation or which provides freight forwarding or air express services.

(r) Uncertificated Security means a share, participation or other interest in property of or an enterprise of the issuer or an obligation of the issuer, which is:

    (1) not represented by an instrument and the transfer of which is registered upon books maintained for that purpose by or on behalf of the issuer;

    (2) of a type commonly dealt in on securities exchanges or markets; and

    (3) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests or obligations.

(s) Withdrawal Order means a non-negotiable instrument, other than an Instruction, signed by a customer of the Insured authorizing the Insured to debit the customer's account in the amount of funds stated therein.

### EXCLUSIONS

Section 2. This bond does not cover:

(a) loss resulting directly or indirectly from forgery or alteration, except when covered under Insuring Agreements (A), (D) or (E);

(b) loss due to riot or civil commotion outside the United States of America and Canada; or loss due to military, naval or usurped power, war or insurrection unless such loss occurs in transit in the circumstances recited in Insuring Agreement (C), and unless, when such transit was initiated, there was no knowledge of such riot, civil commotion, military, naval or usurped power, war or insurrection on the part of any person acting for the Insured initiating such transit;

(c) loss resulting directly or indirectly from the effects of nuclear fission or fusion or radioactivity; provided, however, that this paragraph shall not apply to loss resulting from industrial uses of nuclear energy;

(d) loss resulting from any act or acts of any person who is a member of the Board of Directors of the Insured or a member of any equivalent body by whatsoever name known unless such person is also an Employee or an elected official of the Insured in some other capacity, nor, in any event, loss resulting from the act or acts of any person while acting in the capacity of a member of such Board or equivalent body;

(e) loss resulting directly or indirectly from the complete or partial non-payment of, or default upon, any loan or transaction involving the Insured as a lender or borrower, or extension of credit, including the purchase, discounting or other acquisition of false or genuine accounts, invoices, notes, agreements or Evidences of Debt, whether such loan, transaction or extension was procured in good faith or through trick, artifice, fraud or false pretenses; except when covered under Insuring Agreements (A), (D) or (E);

(f) loss resulting from any violation by the Insured or by any Employee

    (1) of law regulating (i) the issuance, purchase or sale of securities, (ii) securities transactions upon security exchanges or over the counter market, (iii) investment companies, or (iv) investment advisers, or

    (2) of any rule or regulation made pursuant to any such law, unless it is established by the Insured that the act or acts which caused the said loss involved fraudulent or dishonest conduct which would have caused a loss to the Insured in a similar amount in the absence of such laws, rules or regulations;

(g) loss resulting directly or indirectly from the failure of a financial or depository institution, or its receiver or liquidator, to pay or deliver, on demand of the Insured, funds or Property of the Insured held by it in any capacity, except when covered under Insuring Agreements (A) or (B)(1)(a);

(h) loss caused by an Employee, except when covered under Insuring Agreement (A) or when covered under Insuring Agreement (B) or (C) and resulting directly from misplacement, mysterious unexplainable disappearance or destruction of or damage to Property;

(i) loss resulting directly or indirectly from transactions in a customer's account, whether authorized or unauthorized, except the unlawful withdrawal and conversion of Money, securities or precious metals, directly from a customer's account by an Employee provided such unlawful withdrawal and conversion is covered under Insuring Agreement (A);

(j) damages resulting from any civil, criminal or other legal proceeding in which the Insured is alleged to have engaged in racketeering activity except when the Insured establishes that the act or acts giving rise to such damages were committed by an Employee under circumstances which result directly in a loss to the Insured covered by Insuring Agreement (A). For the purposes of this exclusion, "racketeering activity" is defined in 18 United States Code 1961 et seq., as amended;

(k) loss resulting directly or indirectly from the use or purported use of credit, debit, charge, access, convenience, identification, cash management or other cards

    (1) in obtaining credit or funds, or

    (2) in gaining access to automated mechanical devices which, on behalf of the Insured, disburse Money, accept deposits, cash checks, drafts or similar written instruments or make credit card loans, or

    (3) in gaining access to point of sale terminals, customer-bank communication terminals, or similar electronic terminals of electronic funds transfer systems,

whether such cards were issued, or purport to have been issued, by the Insured or by anyone other than the Insured, except when covered under Insuring Agreement (A);

(l) loss involving automated mechanical devices which, on behalf of the Insured, disburse Money, accept deposits, cash checks, drafts or similar written instruments or make credit card loans, except when covered under Insuring Agreement (A);

(m) loss through the surrender of Property away from an office of the Insured as a result of a threat

    (1) to do bodily harm to any person, except loss of Property in transit in the custody of any person acting as messenger provided that when such transit was initiated there was no knowledge by the Insured of any such threat, or

    (2) to do damage to the premises or property of the Insured, except when covered under Insuring Agreement (A);

(n) loss resulting directly or indirectly from payments made or withdrawals from a depositor's or customer's account involving erroneous credits to such account, unless such payments or withdrawals are physically received by such depositor or customer or representative of such depositor or customer who is within the office of the Insured at the time of such payment or withdrawal, or except when covered under Insuring Agreement (A);

(o) loss involving items of deposit which are not finally paid for any reason, including but not limited to Forgery or any other fraud, except when covered under Insuring Agreement (A);

(p) loss resulting directly or indirectly from counterfeiting, except when covered under Insuring Agreements (A), (E), or (F);

**02/04/2005 08:55 AM**

(q) loss of any tangible item of personal property which is not specifically enumerated in the paragraph defining Property if such property is specifically insured by other insurance of any kind and in any amount obtained by the Insured, and in any event, loss of such property occurring more than 60 days after the Insured takes possession of such property, except when covered under Insuring Agreements (A) or (B)(2);

(r) loss of Property while
(1) in the mail, or
(2) in the custody of any Transportation Company, unless covered under Insuring Agreement (C),
except when covered under Insuring Agreement (A);

(s) potential income, including but not limited to interest and dividends, not realized by the Insured or by any customer of the Insured;

(t) damages of any type for which the Insured is legally liable, except compensatory damages, but not multiples thereof, arising directly from a loss covered under this bond;

(u) all fees, costs and expenses incurred by the Insured
(1) in establishing the existence of or amount of loss covered under this bond, or
(2) as a party to any legal proceeding whether or not such legal proceeding exposes the Insured to loss covered by this bond;

(v) indirect or consequential loss of any nature;

(w) loss involving any Uncertificated Security except an Uncertificated Security of any Federal Reserve Bank of the United States or when covered under Insuring Agreement (A);

(x) loss resulting directly or indirectly from any dishonest or fraudulent act or acts committed by any non-Employee who is a securities, commodities, money, mortgage, real estate, loan, insurance, property management, investment banking broker, agent or other representative of the same general character;

(y) loss caused directly or indirectly by a Partner of the Insured unless the amount of such loss exceeds the Financial Interest in the Insured of such Partner and the Deductible Amount applicable to this bond, and then for the excess only;

(z) loss resulting directly or indirectly from any actual or alleged representation, advice, warranty or guarantee as to the performance of any investments;

(aa) loss due to liability imposed upon the Insured as a result of the unlawful disclosure of non-public material information by the Insured or any Employee, or as a result of any Employee acting upon such information, whether authorized or unauthorized.

### DISCOVERY

**Section 3.** This bond applies to loss discovered by the Insured during the Bond Period. Discovery occurs when the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

Discovery also occurs when the Insured receives notice of an actual or potential claim in which it is alleged that the Insured is liable to a third party under circumstances which, if true, would constitute a loss under this bond.

### LIMIT OF LIABILITY

**Section 4.**

*Aggregate Limit of Liability*

The Underwriter's total liability for all losses discovered during the Bond Period shown in Item 2 of the Declarations shall not exceed the Aggregate Limit of Liability shown in Item 3 of the Declarations. The Aggregate Limit of Liability shall be reduced by the amount of any payment made under the terms of this bond.

Upon exhaustion of the Aggregate Limit of Liability by such payments:

(a) The Underwriter shall have no further liability for loss

or losses regardless of when discovered and whether or not previously reported to the Underwriter, and

(b) The Underwriter shall have no obligation under General Agreement F to continue the defense of the Insured; and upon notice by the Underwriter to the Insured that the Aggregate Limit of Liability has been exhausted, the Insured shall assume all responsibility for its defense at its own cost

The Aggregate Limit of Liability shall not be increased or reinstated by any recovery made and applied in accordance with subsections (a), (b) and (c) of Section 7. In the event that a loss of Property is settled by the Underwriter through the use of a lost instrument bond, such loss shall not reduce the Aggregate Limit of Liability.

*Single Loss Limit of Liability*

Subject to the Aggregate Limit of Liability, the Underwriter's liability for each Single Loss shall not exceed the applicable Single Loss Limit of Liability shown in Item 4 of the Declarations. If a Single Loss is covered under more than one Insuring Agreement or Coverage, the maximum payable shall not exceed the largest applicable Single Loss Limit of Liability.

*Single Loss Defined*

Single Loss means all covered loss, including court costs and attorneys' fees incurred by the Underwriter under General Agreement F, resulting from

(a) any one act or series of related acts of burglary, robbery or attempt thereat, in which no Employee is implicated, or

(b) any one act or series of related unintentional or negligent acts or omissions on the part of any person (whether an Employee or not) resulting in damage to or destruction or misplacement of Property, or

(c) all acts or omissions other than those specified in (a) and (b) preceding, caused by any person (whether an Employee or not) or in which such person is implicated, or

(d) any one casualty or event not specified in (a), (b) or (c) preceding.

### NOTICE/PROOF—LEGAL PROCEEDINGS AGAINST UNDERWRITER

**Section 5.**

(a) At the earliest practicable moment, not to exceed 30 days, after discovery of loss, the Insured shall give the Underwriter notice thereof.

(b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars.

(c) Lost Certificated Securities listed in a proof of loss shall be identified by certificate or bond numbers if such securities were issued therewith.

(d) Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss.

(e) If any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to equal the minimum period of limitation provided by such law.

(f) This bond affords coverage only in favor of the Insured. No suit, action or legal proceedings shall be brought hereunder by any one other than the named Insured.

### VALUATION

**Section 6.** Any loss of Money, or loss payable in Money, shall be paid, at the option of the Insured, in the Money of the country in which the loss was sustained or in the United States of America dollar equivalent thereof determined at the rate of exchange at the time of payment of such loss.

*Securities*

The Underwriter shall settle in kind its liability under this bond on account of a loss of any securities or, at the option of the

02/04/2005 08:55 AM

Insured, shall pay to the Insured the cost of replacing such securities, determined by the market value thereof at the time of such settlement. However, if prior to such settlement the Insured shall be compelled by the demands of a third party or by market rules to purchase equivalent securities, and gives written notification of this to the Underwriter, the cost incurred by the Insured shall be taken as the value of those securities. In case of a loss of subscription, conversion or redemption privileges through the misplacement or loss of securities, the amount of such loss shall be the value of such privileges immediately preceding the expiration thereof. If such securities cannot be replaced or have no quoted market value, or if such privileges have no quoted market value, their value shall be determined by agreement or arbitration.

If the applicable coverage of this bond is subject to a Deductible Amount and/or is not sufficient in amount to indemnify the Insured in full for the loss of securities for which claim is made hereunder, the liability of the Underwriter under this bond is limited to the payment for, or the duplication of, so much of such securities as has a value equal to the amount of such applicable coverage.

### Books of Account and Other Records

In case of loss of, or damage to, any books of account or other records used by the Insured in its business, the Underwriter shall be liable under this bond only if such books or records are actually reproduced and then for not more than the cost of the blank books, blank pages or other materials plus the cost of labor for the actual transcription or copying of data which shall have been furnished by the Insured in order to reproduce such books and other records.

### Property other than Money, Securities or Records

In case of loss of, or damage to, any Property other than Money, securities, books of account or other records, or damage covered under Insuring Agreement (B)(2), the Underwriter shall not be liable for more than the actual cash value of such Property, or of items covered under Insuring Agreement (B)(2). The Underwriter may, at its election, pay the actual cash value of, replace or repair such property. Disagreement between the Underwriter and the Insured as to the cash value or as to the adequacy of repair or replacement shall be resolved by arbitration .

### Set-Off

Any loss covered under this bond shall be reduced by a set-off consisting of any amount owed to the Employee causing the loss if such loss is covered under Insuring Agreement (A).

## ASSIGNMENT—SUBROGATION—RECOVERY—COOPERATION

Section 7.
(a) In the event of payment under this bond, the Insured shall deliver, if so requested by the Underwriter, an assignment of such of the Insured's rights, title and interest and causes of action as it has against any person or entity to the extent of the loss payment.

(b) In the event of payment under this bond, the Underwriter shall be subrogated to all of the Insured's rights of recovery therefor against any person or entity to the extent of such payment.

(c) Recoveries, whether effected by the Underwriter or by the Insured, shall be applied net of the expense of such recovery first to the satisfaction of the Insured's loss which would otherwise have been paid but for the fact that it is in excess of either the Single or Aggregate Limit of Liability, secondly, to the Underwriter as reimbursement of amounts paid in settlement of the Insured's claim, and thirdly, to the Insured in satisfaction of any Deductible Amount. Recovery on account of loss of securities as set forth in the second paragraph of Section 6 or recovery from reinsurance and/or indemnity of the Underwriter shall not be deemed a recovery as used herein.

(d) Upon the Underwriter's request and at reasonable times and places designated by the Underwriter the Insured shall

(1) submit to examination by the Underwriter and subscribe to the same under oath; and

(2) produce for the Underwriter's examination all pertinent records; and

(3) cooperate with the Underwriter in all matters pertaining to the loss.

(e) The Insured shall execute all papers and render assistance to secure to the Underwriter the rights and causes of action provided for herein. The Insured shall do nothing after discovery of loss to prejudice such rights or causes of action.

### LIMIT OF LIABILITY UNDER THIS BOND AND PRIOR INSURANCE

Section 8. With respect to any loss set forth in sub-section (c) of Section 4 of this bond which is recoverable or recovered in whole or in part under any other bonds or policies issued by the Underwriter to the Insured or to any predecessor in interest of the Insured and terminated or canceled or allowed to expire and in which the period for discovery has not expired at the time any such loss thereunder is discovered, the total liability of the Underwriter under this bond and under such other bonds or policies shall not exceed, in the aggregate, the amount carried hereunder on such loss or the amount available to the Insured under such other bonds or policies, as limited by the terms and conditions thereof, for any such loss if the latter amount be the larger.

If the coverage of this bond supersedes in whole or in part the coverage of any other bond or policy of insurance issued by an Insurer other than the Underwriter and terminated, canceled or allowed to expire, the Underwriter, with respect to any loss sustained prior to such termination, cancelation or expiration and discovered within the period permitted under such other bond or policy for the discovery of loss thereunder, shall be liable under this bond only for that part of such loss covered by this bond as is in excess of the amount recoverable or recovered on account of such loss under such other bond or policy, anything to the contrary in such other bond or policy notwithstanding.

### OTHER INSURANCE OR INDEMNITY

Section 9. Coverage afforded hereunder shall apply only as excess over any valid and collectible insurance or indemnity obtained by the Insured, or by one other than the Insured on Property subject to exclusion (q) or by a Transportation Company, or by another entity on whose premises the loss occurred or which employed the person causing the loss or the messenger conveying the Property involved.

### OWNERSHIP

Section 10. This bond shall apply to loss of Property (1) owned by the Insured, (2) held by the Insured in any capacity, or (3) for which the Insured is legally liable. This bond shall be for the sole use and benefit of the Insured named in the Declarations.

### DEDUCTIBLE AMOUNT

Section 11. The Underwriter shall be liable hereunder only for the amount by which any single loss, as defined in Section 4, exceeds the Single Loss Deductible Amount for the Insuring Agreement or Coverage applicable to such loss, subject to the Aggregate Limit of Liability and the applicable Single Loss Limit of Liability.

The Insured shall, in the time and in the manner prescribed in this bond, give the Underwriter notice of any loss of the kind covered by the terms of this bond, whether or not the Underwriter is liable therefor, and upon the request of the Underwriter shall file with it a brief statement giving the particulars concerning such loss.

### TERMINATION OR CANCELATION

Section 12. This bond terminates as an entirety upon occur-

02/04/2005 08:55 AM

rence of any of the following:—(a) 60 days after the receipt by the Insured of a written notice from the Underwriter of its desire to cancel this bond, or (b) immediately upon the receipt by the Underwriter of a written notice from the Insured of its desire to cancel this bond, or (c) immediately upon the taking over of the Insured by a receiver or other liquidator or by State or Federal officials, or (d) immediately upon the taking over of the Insured by another institution, or (e) immediately upon exhaustion of the Aggregate Limit of Liability, or (f) immediately upon expiration of the Bond Period as set forth in Item 2 of the Declarations.

This bond terminates as to any Employee or any partner, officer or employee of any Processor—(a) as soon as any Insured, or any director or officer not in collusion with such person, learns of any dishonest or fraudulent act committed by such person at any time, whether in the employment of the Insured or otherwise, whether or not of the type covered under Insuring Agreement (A), against the Insured or any other person or entity, without prejudice to the loss of any Property then in transit in the custody of such person, or (b) 15 days after the receipt by the Insured of a written notice from the Underwriter of its desire to cancel this bond as to such person.

Termination of the bond as to any Insured terminates liability for any loss sustained by such Insured which is discovered after the effective date of such termination.

IN WITNESS WHEREOF, the Underwriter has caused this Bond to be signed by its President and by its Secretary at Baltimore, Maryland, and to be countersigned on the DECLARATIONS page by a duly authorized representative.

Attest:                                                        By

_[signature]_                                              _[signature]_

                                Secretary                                        President

02/04/2005 08:55 AM

**The F&D Companies**

**RIDER**

Home Office
P.O. Box 1227
Baltimore, Md. 21203

This rider forms a part of and is issued by the Underwriter of the bond numbered below.

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

To be attached to and form part of Bond No. **FIB 0001647 03**    Effective Date  **1-15-05**

It is agreed that:

    1.  Item 3. of the Declarations Page is deleted in its entirety and substituted in lieu thereof is the following:

        "Item 3.  The Aggregate Liability of the Underwriter for each Bond Year during the Bond Period shall be **$15,000,000**

    2.  The following definition is added to Section 1., DEFINITIONS, of the Conditions and Limitations:

        "Bond Year means the period of one year following either the effective date of the Bond Period or any anniversary thereof, or, if the time between the effective date or anniversary and the termination of this bond is less than one year, such lesser period."

    3.  The first and second paragraphs of Section 4., LIMIT OF LIABILITY, are deleted and inserted in lieu thereof is the following:

        "Aggregate Limit of Liability

    The Underwriter's total liability for all losses discovered during each Bond Year of the Bond Period shown in Item 2. of the Declarations shall not exceed the Aggregate Limit of Liability shown in Item 3. of the Declarations.  The Aggregate Limit of Liability shall be reduced by the amount of any payment under the terms of this bond.

    Upon exhaustion of the Aggregate Limit of Liability by such payments:

        (a)  The Underwriter shall have no further liability for loss or losses discovered during the Bond Year whether or not previously reported to the Underwriter, and

        (b)  The Underwriter shall have no obligation under General Agreement F. to continue the defense of the Insured, and upon notice by the Underwriter to the Insured that the Aggregate Limit of Liability has been exhausted, the Insured shall assume all responsibility for its defense at its own cost."

    4.  Item (e) of the first paragraph of Section 12., TERMINATION OR CANCELATION, is deleted and substituted in lieu thereof is the following:

        "(e)  immediately upon exhaustion of the Aggregate Limit of Liability for the final Bond Year of the Bond Period, or"

F3626a   ANNUAL AGGREGATE RIDER

FOR USE WITH FINANCIAL INSTITUTION BOND,
STANDARD FORM NOS. 14 AND 24 AND EXCESS
BANK EMPLOYEE DISHONESTY BOND,
STANDARD FORM NO. 28.

EDITION MARCH, 1994.

AGENT

**Exhibit A-11**
**Page 11**

08/24/2005 08:55 AM



The F&D Companies

**RIDER**

Home Office
P.O. Box 1227
Baltimore, MD 21203

This rider forms a part of and is issued by the Underwriter of the bond numbered below.

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

To be attached to and form part of Bond No. **PIB 0001647 03**          Effective Date  **1-15-05**

It is agreed that:

The attached bond is amended by adding to the Section which provides for cancelation of this bond, as an entirety, an additional paragraph as follows:

No cancelation of this bond, as an entirety, whether by or at the request of the Insured or by the Company or Underwriter, shall take effect prior to the expiration of   30 days after written notice of such cancelation has been filed with

**Arkansas Securities Department**

unless an earlier date of such cancelation is approved by said

**Arkansas Securities Department**

SR 5083c   *GENERAL CANCELATION CLAUSE RIDER*

FOR USE WITH ALL FORMS OF BONDS WHERE NOTICE OF
CANCELATION MUST BE GIVEN TO COMPLY WITH A STATUTE
OR DEPARTMENTAL AUTHORITY.

REVISED TO JUNE, 1990.

F4690f

AGENT
**Exhibit A-12**
**Page 12**

**The F&D Companies**

02-__-__ 08:55 AM

**RIDER/ENDORSEMENT**

Home Office
P.O. Box 1227
Baltimore, MD 21203

---

This rider/endorsement forms a part of and is issued by the Underwriter/Company of the bond/policy numbered below.

If this form is issued concurrently with the bond/policy, this Attaching Clause need not be completed.

To be attached to and form part of Bond/Policy No. FIB 0001647 03    Effective Date 1-15-05

---

It is agreed that:

In compliance with the ruling of the Commissioner of Insurance of the State of California and the Opinion of the Attorney General of that State requiring that the premium for all bonds or policies be endorsed thereon, the basic premium charged for the attached bond/policy for the period

from    1-15-05

to      1-15-08

is      $454,130

SR 5862   CALIFORNIA PREMIUM RIDER

FOR USE WITH ALL FORMS OF STANDARD BONDS, COMBINATION SAFE DEPOSITORY POLICY FOR
FINANCIAL INSTITUTIONS, AND COMPUTER CRIME POLICY FOR FINANCIAL INSTITUTIONS
TO COMPLY WITH RULINGS OF THE INSURANCE COMMISSIONER AND THE ATTORNEY GENERAL.

REVISED TO AUGUST, 1968.

F6484

AGENT

**Exhibit A-13**
**Page 13**

02/04/2005 08:55 AM



**RIDER**

Home Office
P.O. Box 1227
Baltimore, Md. 21203

This rider forms a part of and is issued by the Underwriter of the bond numbered below.

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

To be attached to and form part of Bond No. FIB 0001647 03      Effective Date   1-15-05

It is agreed that:

The Underwriter will mark its records to indicate that the National Association of Securities Dealers, Inc. is to be notified promptly concerning the cancelation or substantial modification of the attached bond, whether at the request of the Insured or the Underwriter, and will use its best efforts to so notify said Association but failure to so notify said Association shall not impair or delay the effectiveness of any such cancelation or modification.

SR 5969a  CANCELATION RIDER

FOR USE WITH FINANCIAL INSTITUTION BOND, STANDARD FORM NO. 14, WHEN ISSUED TO THOSE MEMBER FIRMS OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS WHO HAVE EMPLOYEES AND ARE REQUIRED TO JOIN THE SECURITIES INVESTOR PROTECTION CORPORATION, AND WHO ARE SUBJECT TO RULE 15C3-1 UNDER THE SECURITIES EXCHANGE ACT OF 1934, TO PROVIDE FOR NOTICE OF CANCELLATION OR SUBSTANTIAL MODIFICATION TO SUCH ASSOCIATION.

REVISED TO JUNE, 1990.

F9601a

AGENT
**Exhibit A-14**
**Page 14**

02/04/2005 08:55 AM



**RIDER**

Home Office
P.O. Box 1227
Baltimore, Md. 21203

This rider forms a part of and is issued by the Underwriter of the bond numbered below.

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

To be attached to and form part of Bond No. PIB 0001647 03      Effective Date   1-15-05

It is agreed that:

The attached bond is amended by inserting as an additional part in Section I.(e), definition of Employee, the following:

A person who is a registered representative or a registered principal associated with an Insured except a:

  (i) sole proprietor,
  (ii) sole stockholder,
  (iii) director or a trustee of an Insured who is not performing acts coming within the scope of the usual duties of an officer or an employee, or
  (iv) partner.

SR 6139a  NATIONAL ASSOCIATION OF SECURITIES DEALERS RIDER

FOR USE WITH FINANCIAL INSTITUTION BOND, STANDARD FORM NO. 14,
TO INCLUDE CERTAIN REGISTERED PERSONS AS EMPLOYEES WHEN ISSUED
TO AN INSURED WHICH IS A MEMBER OF THE NATIONAL ASSOCIATION OF
SECURITIES DEALERS, INC.

REVISED TO OCTOBER, 1987.

F4744

AGENT
**Exhibit A-15**
**Page 15**

**The**
**H&D**
**Companies**

02/04/2005 08:55 AM

**RIDER**

Home Office
P.O. Box 1227
Baltimore, Md. 21203

This rider forms a part of and is issued by the Underwriter of the bond numbered below.

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

To be attached to and form part of Bond No. **FIB 0001647 03**    Effective Date **1-15-05**

It is agreed that:

1.  The attached bond is amended by adding an Insuring Agreement as follows:

### COMPUTER SYSTEMS FRAUD

Loss resulting directly from a fraudulent

    (1)  entry of Electronic Data or Computer Program into; or

    (2)  change of Electronic Data or Computer Program within

any Computer System operated by the Insured, whether owned or leased; or any Computer System identified in the application for this bond; or a Computer System first used by the Insured during the Bond Period, as provided by General Agreement B. of this bond;

provided that the entry or change causes

    (i)  Property to be transferred, paid or delivered;

    (ii)  an account of the Insured, or of its customer, to be added, deleted, debited or credited; or

    (iii)  an unauthorized account or a fictitious account to be debited or credited.

    In this Insuring Agreement, fraudulent entry or change shall include such entry or change made by an Employee of the Insured acting in good faith on an instruction from a software contractor who has a written agreement with the Insured to design, implement or service programs for a Computer System covered by this Insuring Agreement.

2.  In addition to the Conditions and Limitations in the bond, the following, applicable to the Computer Systems Fraud Insuring Agreement, are added:

### DEFINITIONS

(A)  Computer Program means a set of related electronic instructions which direct the operations and functions of a computer or devices connected to it which enable the computer or devices to receive, process, store or send Electronic Data;

(B)  Computer System means

    (1)  computers with related peripheral components, including storage components wherever located,

    (2)  systems and applications software,

SR 6196   COMPUTER SYSTEMS FRAUD INSURING AGREEMENT
FOR USE WITH FINANCIAL INSTITUTION BONDS, STANDARD FORMS NOS. 14, 15 AND 25.
ADOPTED DECEMBER, 1993.
F139

Page 1 of 2

02/04/2005 08:55 AM

(3)  terminal devices, and

(4)  related communication networks

by which Electronic Data are electronically collected, transmitted, processed, stored and retrieved;

(C)  Electronic Data means facts or information converted to a form usable in a Computer System by Computer Programs, and which is stored on magnetic tapes or disks, or optical storage disks or other bulk media.

EXCLUSIONS

(A)  loss resulting directly or indirectly from the assumption of liability by the Insured by contract unless the liability arises from a loss covered by the Computer Systems Fraud Insuring Agreement and would be imposed on the Insured regardless of the existence of the contract;

(B)  loss resulting directly or indirectly from negotiable instruments, securities, documents or other written instruments which bear a forged signature, or are counterfeit, altered or otherwise fraudulent and which are used as source documentation in the preparation of Electronic Data or manually keyed into a data terminal;

(C)  loss resulting directly or indirectly from

(1)  mechanical failure, faulty construction, error in design, latent defect, fire, wear or tear, gradual deterioration, electrical disturbance or electrical surge which affects a Computer System; or

(2)  failure or breakdown of electronic data processing media; or

(3)  error or omission in programming or processing;

(D)  loss resulting directly or indirectly from the input of Electronic Data into a Computer System terminal device either on the premises of a customer of the Insured or under the control of such a customer by a person who had authorized access to the customer's authentication mechanism;

(E)  loss resulting directly or indirectly from the theft of confidential information.

SERIES OF LOSSES

All loss or series of losses involving the fraudulent acts of one individual, or involving fraudulent acts in which one individual is implicated, whether or not that individual is specifically identified, shall be treated as a Single Loss and subject to the Single Loss Limit of Liability.  A series of losses involving unidentified individuals but arising from the same method of operation shall be deemed to involve the same individual and in that event shall be treated as a Single Loss and subject to the Single Loss Limit of Liability.

3.  The exclusion below, found in Financial Institution Bond, Standard Form Nos. 14 and 25, does not apply to the Computer Systems Fraud Insuring Agreement.

"loss involving any Uncertificated Security except an Uncertificated Security of any Federal Reserve Bank of the United States or when covered under Insuring Agreement (A);"

Accepted:

_____
(INSURED)


By:_____
(OFFICIAL TITLE)

SR 6196

Page 2 of 2

AGENT
Exhibit A-17
Page 17

The
**F&D**
Companies

02/28/2005 08:55 AM

**RIDER A**

Home Office
P.O. Box 1227
Baltimore, MD 21203

This rider forms a part of and is issued by the Underwriter of the bond numbered below.

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

To be attached to and form part of Bond No.              Effective Date

It is agreed that:

Insuring Agreement (A) is deleted and substituted in lieu thereof is the following:

"FIDELITY"

(A) Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.

Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent.

    (a) to cause the Insured to sustain such loss, and
    (b) to obtain financial benefit for the Employee or another person or entity.

However, if some or all of the Insured's loss results directly or indirectly from Loans, that portion of the loss is not covered unless the Employee was in collusion with one or more parties to the transactions and has received, in connection therewith, a financial benefit.

As used throughout this Insuring Agreement, financial benefit does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions."

**Exhibit A-18**
**Page 18**

The
Companies

02/?/?005 08:55 AM

**RIDER B**

Home Office
P.O. Box 1227
Baltimore, MD 21203

| This rider forms a part of and is issued by the Underwriter of the bond numbered below. |
|---|

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

| To be attached to and form part of Bond No. | Effective Date |
|---|---|

It is understood and agreed that:

1.  The attached bond is amended by inserting an additional Insuring Agreement as follows:

### 'COURT COSTS AND ATTORNEYS' FEES

The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond.

In the event such loss, claim or damage is subject to a Deductible Amount, this Insuring Agreement shall not apply to any such loss, claim or damage equal to or less than such Deductible Amount, but if such loss, claim or damage is greater than such Deductible Amount, the liability of the Underwriter under this Insuring Agreement is limited to the proportion of the court costs and attorneys' fees incurredand paid by the Insured that the amount of such loss, claim or damage, which if established against the Insured, would be recoverable under this bond, bears to the sum of such amount and such Deductible Amount.

In consideration of such indemnity, the Insured shall promptly (an in no event to exceed 30 days) give notice to the Underwriter of the institution of any such suit or legal proceeding; at the request of the Underwriter shall furnish it with copies of all pleadings and papers therein; and at the Underwriter's election shall permit the Underwriter to conduct defense of such suit or legal proceeding, in the Insured's name, through attorneys of the Underwriter's own selection. In the event of such election by the Underwriter, the Insured shall give all reasonable information and assistance, other than pecuniary, which the Underwriter shall deem necessary to the proper defense of such suit or legal proceeding.

2. The Single Loss Limit of Liability for the Court Cost and Attorney's Fees Insuring Agreemet is limited to the amount shown in the Declarations, or amendment hereto, and such liability shall be a part of and not in addition to the first Single Loss Limit of Liability stated in Item 4 of theDeclarations."

0055 FIB's not CUB or CUSB – Court Costs & Attorneys' Fees as a separate Insuring Agreement with its own limit within the Limit for Basic

**Exhibit A-19**
**Page 19**



The F&D Companies

02/28/2005 08:55 AM

**RIDER C**

Home Office
P.O. Box 1227
Baltimore, MD 21203

This rider forms a part of and is issued by the Underwriter of the bond numbered below.

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

To be attached to and form part of Bond No.          Effective Date

It is agreed that:

    Section 12(a) of the TERMINATION OR CANCELATION SECTION, is deleted and substituted in lieu thereof is the following:

    Section 12(a) 90 days after the receipt by the Insured of a written notice from the Underwriter of its desire to cancel this bond, or"



The
F&D
Companies

02/04/2005 08:55 AM

**RIDER D**

Home Office
P.O. Box 1227
Baltimore, MD 21203

| This rider forms a part of and is issued by the Underwriter of the bond numbered below. |
|---|

If this form is issued concurrently with the bond, this Attaching Clause need not be completed.

| To be attached to and form part of Bond No. | Effective Date |
|---|---|

It is agreed that:

1.  The attached bond is amended by adding an additional Insuring Agreement as follows:

        "CLAIMS EXPENSE"

    Reasonable expenses necessarily incurred and paid by the Insured in preparing any valid and collectible claim for loss caused by any Dishonest or Fraudulent Act or Acts of any of the Insured's Employees, which loss exceeds the Single Loss Deductible amount applicable to Insuring Agreement (A).

2.  Exclusion (u)(1) shall not apply to the Insuring Agreement set forth in paragraph 1 of this rider.

**Exhibit A-21**
**Page 21**

11/02/2004 11:22 FAX 6586800210         BTE MARGIN DEPT

**02/04/2005 08:55 AM**

## REVISED ATTACHMENT TO ITEM 7. (e)

### COMPUTER SYSTEMS SCHEDULE

| | | |
|---|---|---|
| ABN AMRO | ACORDE | ACD System Administrator |
| BAMTRAC | Bank of New York | BETA Systems |
| Bloomberg | Bond Express | Bond Trac |
| BranchNet Portal | Bridge | Ceridian |
| Citrix Network | Cute FTP | Digitrade |
| DTC | FIPs | Intellistor, Imaging |
| LiveBatch | LOPR | Merrill-Lynch |
| Microsoft Office | MF Trade Blotter Access | Mitek |
| NASDAQ | Quote.com | NRS |
| Oracle Commissions | OCC | PAS Software |
| Pershing | PlusAdmin | Portia |
| Quilix | NSCC | Security APL |
| Sourcetime & Attendance | SuRPAS | Trace |

Chase Insight, Treasury Workstation

PC Manager (Wired fund authorization sw from Wells Fargo)


**Total – 41 Computer Systems**

02/04/2005 08:55 AM

<u>ATTACHMENT TO ITEM 8</u>

DTC (Depository Trust Company)
Tonya Plear
55 Water Street, 51st floor
New York, NY 10041

Merrill Lynch (Foreign Securities)
Sandee Davis
3601 N. Market St.
Wilmington, DE 19802

Fidelitrade Inc. (Precious Metals)
Sandee Davis
3601 N. Market St.
Wilmington, DE 19802

Bank of New York (Fed Securitites)
Peter Annarumma
Broker Dealer Services
One Wall Street, 50th floor
New York, NY 10286

OCC (Option Clearing Corp)
Fabria Dean
877-457-5184
One Wacker Dr.  Ste. 500
Chicago, IL 60606

Scudder (Money Market)
Darin Coffman 816-435-6228
210 W. 10th Street
Kansas City, MO. 64105

**02/04/2005 08:55 AM**

Bond No. _____
This form must be completed for each new bond and at each premium anniversary.



Fidelity and Deposit Company of Maryland
Colonial American Casualty and Surety Company

Home Offices
P.O. Box 1227
Baltimore, Md. 21203

APPLICATION FOR A
FINANCIAL INSTITUTION BOND, STANDARD FORM NO. 14
FOR BROKER/DEALERS

Application is hereby made by     **LINSCO/PRIVATE LEDGER CORP.**

(List all Insureds, including Employee Benefit Plans)

Principal Address  **9785 Towne Centre Drive, San Diego, CA 92121**     (herein called Insured)
(No.)         (Street)         (City)         (State)         (Zip Code)

for a     **Primary**     Financial Institution Bond, Standard Form No. 14, to become effective as of
(primary, excess, concurrent, co-surety, coinsured)

12:01 a.m. on _____ to 12:01 a.m. on _____ in the Aggregate Limit of Liability of $ **7,500,00**

Date Insured was established   **1973**    Name of prior carrier   **Fidelity and Deposit**

1.   Insured is a (check appropriate box):
     Stock Broker ☐, Investment Banker ☐, Dealer in Securities (not Dealer in Mortgages or Commercial Paper) ☒, Investment Trust (not Small Business Investment Company or Real Estate Investment Trust) ☐, Mutual Fund ☐, Foundation ☐, Endowment Fund ☐, Commodity Broker (If Stock Exchange Member) ☐, Other ☐ _____

2.   Insured is a (check appropriate box): Sole Proprietorship ☐, Partnership ☐, Corporation ☒

3.   List exchanges which you are a member of:

| Name | Name |
|---|---|
| Boston Stock Exchange | |
| | |
| | |

4.   Are you a member of the National Association of Securities Dealers, Inc.? .................................................... Yes ☒ No ☐

5.   For all Insureds, show the total number of:  **10/01/04**     **(includes 13 contractors)**     No. of
     (a) Salaried officers and employees, retained attorneys and persons provided by employment contractors ............ **1,142**
     (b) NASD Registered Representatives (other than those counted in (a) above) ........................................ **5,763**
     (c) Locations (other than the Home Office of the first Named Insured) in the U.S., Canada, Puerto Rico and Virgin Islands ...... **2,547**
     (d) Locations outside of the U.S., Canada, Puerto Rico and Virgin Islands, list below:

| Location | Location |
|---|---|
| | |
| | |
| | |

6.   Complete the following:                                                                                          Total Assets
     (a) As of latest Dec. 31 ...................................................................................... $**488,537,000**
     (b) As of latest June 30 ..................................................................................... $**509,083,000**

7.   Complete the following for optional coverages desired:
     Form of Coverage                                                                                          Single Loss Limit
     (a) Is Insuring Agreement (D) - Forgery or Alteration Coverage desired? ................... Yes ☒ No ☐ ............ $ **7,500,000**
     (b) Is Insuring Agreement (E) - Securities Coverage Desired? ................................ Yes ☒ No ☐ ............ $ **7,500,000**

F4757e  1-00
Revised to December, 1993
SA 5870e Printed in U.S.A.

1 of 4

7. Complete the following for optional coverages desired (cont'd.):

<span>Single Loss Limit</span>

(c) Is Extortion – Threats to Persons Coverage desired? ........................ Yes ☐ No ☒ ................... $ _____

02/04/2005 08:56 A

If "Yes", list below locations to be excluded:

| Location | Location |
|---|---|
| | |
| | |
| | |
| | |

<span>Single Loss Limit</span>

(d) Is Extortion – Threats to Property Coverage desired? ........................ Yes ☐ No ☒ ................... $ _____

If "Yes", list below locations to be excluded:

| Location | Location |
|---|---|
| | |
| | |
| | |

<span>Single Loss Limit</span>

(e) Is Computer Systems Fraud Coverage desired? ........................ Yes ☒ No ☐ ................... $7,500,000

If "Yes", complete the following:

(1) Insured's Computer System(s)

For the Computer System(s) you operate, whether owned or leased, complete the following:

a) Number of independent software contractors authorized to design, implement or service programs for your System(s).... 78

b) Is access to your System(s) by customers or other outside parties permitted? .... yes on some and ........ Yes ☒ No ☐
no on others

(2) Other Computer Systems

List below other Computer System(s) for which coverage is desired:

Computer System(s)

_____ SEE ATTACHED SHEET _____

(f) Is coverage desired on businesses engaged in the data processing of your checks or other accounting records? ........................ Yes ☒ No ☐

If "Yes", list below the name and location of each data processor:

| Name & Location | Name & Location |
|---|---|
| Ceridian | |
| 8100 34th Avenue | |
| Minneapolis, MN 55425-1640 | |

<span>Single Loss Limit</span>

(g) If you are a partnership, is coverage desired on your partners? Not applicable ...... Yes ☐ No ☐ ................... $ _____

If "Yes", list below the name of each partner:

| Name | Name |
|---|---|
| | |
| | |
| | |
| | |
| | |

8. Are you a direct participant in a depository for the central handling of securities? ........................ Yes ☒ No ☐

If "Yes", list below the name and location of each depository: SEE ATTACHED SHEET

| Name & Location | Name & Location |
|---|---|
| | |
| | |
| | |
| | |

F4757e - 1.00
Revised to December, 1993
SA 5870e Printed in U.S.A.

2 of 4

9.   For deductibles, complete the following: (NOTE: Deductibles on Insuring Agreements (D) and (E) must be at least equal to that carried on the Basic Bond Coverage. Deductibles on Extortion Coverage may be written in any amount.)

**02/04/2005 08:55 AM**

| | Coverage | Single Loss Deductible |
|---|---|---|
| (a) | All coverages except Insuring Agreements (D), (E), and Extortion .................................................. $ | _____ |
| (b) | Insuring Agreement (D) – Forgery or Alteration ......................................................................... $ | 100,000 |
| (c) | Insuring Agreement (E) – Securities ........................................................................................... $ | 100,000 |
| (d) | Extortion – Threats to Persons .................................................................................................... $ | N/A |
| (e) | Extortion – Threats to Property ................................................................................................... $ | N/A |

10. If coverage is being written on an excess, concurrent or co-surety basis, show the names of the other carriers and bond limits. In the case of co-surety also show percentage participations:

_____

_____

_____

11. If coverage is being written on a coinsurance basis, show your percentage participation _____ %. (NOTE: Insured may assume a participation of between 5% and 25%.)

12. Are accounts insured by the Securities Investors Protection Corporation?.................................................. Yes ☒ No ☐

13. AUDIT PROCEDURES:

   (a) Is there an annual ☒, semi-annual ☐ audit by an independent CPA? ................................................. Yes ☒ No ☐

   (b) If "Yes", is it a complete audit made in accordance with generally accepted auditing standards and so certified?.................... Yes ☒ No ☐

   (c) If the answer to (b) is "No", explain the scope of the CPA's examination _____

   (d) Is the audit report rendered directly to all partners if a partnership or to the Board of Directors if a corporation?.................... Yes ☒ No ☐

   (e) Name and location of CPA  Deloitte & Touche LLP, 695 Towne Centre Drive, Costa Mesa, CA 92626

   (f) Date of completion of the last audit by CPA  February 25, 2004

   (g) Is there a continuous internal audit by an Internal Audit Department?.................................................. Yes ☒ No ☐

   (h) If "Yes", are monthly reports rendered directly to all partners if a partnership or to the Board of Directors if a corporation?....... Yes ☐ No ☒

   (i) Are money and securities actually counted and verified?.................................................. Yes ☒ No ☐

   (j) Are the ledger balances to the credit of customers verified?.................................................. Yes ☒ No ☐

14. INTERNAL CONTROLS (OTHER THAN AUDIT PROCEDURES):

   (a) Do you require annual vacations of at least two consecutive weeks for all personnel? ........................... Yes ☐ No ☒

      If "No", explain: <u>Employees are allowed to take individual vacation days</u>

      <u>or one week of vacation at a time.</u>

_____

   (b) Are bank accounts reconciled by someone not authorized to deposit or withdraw?.................................. Yes ☒ No ☐

      If "No", explain: _____

_____

_____

   (c) Is countersignature of checks required?.................................................. Yes ☒ No ☐

      If "No", explain: _____

_____

   (d) Are monthly statements (whether or not there was activity in the account) mailed directly to all customers?.......... Yes ☒ No ☐

      If "No", explain: _____

_____

15. Has there been any change in ownership or management within the past three years? ..................................... Yes ☒ No ☐

   If "Yes", explain: <u>A new chief executive office was appointed by the</u>

      <u>board of directors. The former chief executive officer remins as</u>

      <u>Linsco/Private Ledger Corp.'s Chairman of the Board.</u>

16. Has any insurance been declined or canceled during the past three years? (not applicable in the state of Missouri) ............ Yes ☐ No ☒

   If "Yes", explain: _____

_____

_____

F4757e - 1-00
Revised to December, 1993
SA 5870c Printed in U.S.A.

3 of 4

**Exhibit A-26**
**Page 26**

17. List all losses sustained during the past three years, whether reimbursed or not, from _____ to _____

**02/04/2005 08:55 AM**                                  (month, day, year)        (month, day, year)

Check if none ☐

| Date of Loss | Type of Loss | Amount of Loss | Amount Recovered from Insurance | Amount Recovered from other than Insurance | Amount of Loss Pending | If Loss occurred at other than Main Office, state location |
|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FRAUD NOTICES:** Prior to signing this Application, please review the following statutory fraud notices as they may apply to the Company's domicile.

**ARKANSAS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**COLORADO:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**FLORIDA:** Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading statement is guilty of a felony of the third degree.

**KENTUCKY:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**LOUISIANA:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**MAINE:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or denial of insurance benefits.

**NEW JERSEY:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**NEW MEXICO:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**NEW YORK:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each violation.

**OHIO:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**OKLAHOMA:** Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy, containing false, incomplete or misleading information is guilty of a felony.

**PENNSYLVANIA:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and subjects such person to criminal and civil penalties.

**VIRGINIA:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

Dated at _Boston_ this _22nd_ day of _December_ , 2004

LINSCO/PRIVATE LEDGER CORP.                By _Stephanie L. Brown_
(Insured)                                            (Name and Title)

Stephanie L. Brown, Secretary and Managing Director

F4757c - 1-00
Revised to December, 1993                 4 of 4
SA 5870c Printed in U.S.A.

02/04/2005 08:55 AM



# FINANCIAL INSTITUTION BOND
## STANDARD FORM NO. 14

The F&D Companies
P.O. Box 1227
Baltimore, MD 21203

Exhibit A-28
Page 28

**02/04/2005 08:55 AM**



**ZURICH**

January 27, 2005

LPL Holdings
Linsco/Private Ledger Corp.
9785 Towne Centre Drive
San Diego, California 92121

RE: Financial Institution Bond Form 14 – FIB 0001647 03

Gentlemen:

Acting upon your application, we offer you the enclosed bond/policy. The coverage's, limits and deductibles provided by the bond/policy may vary from those requested in your application. If there are differences in coverage's, limits or deductibles, these differences are a result of the negotiations we had in developing your bonding and/or insurance program, and they supersede what was requested in your application.

By retaining this bond/policy and paying the premium billed, you have accepted this offer of coverage's as established by the enclosed bond/policy.

Very truly yours,

Zurich North America
Financial Enterprises

Zurich North America
Financial Enterprises
4980 U.S. Highway 42, Suite 2800
Louisville, KY 40222

http://www.zurich.com

Direct Phone 502-429-9700
Direct Fax 502-429-9727
E-Mail
janet.duncan@zurichna.com

**Exhibit A-29**
**Page 29**

ORIGINAL

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

LPL Financial Corporation, formerly known 08 JAN -7 PM 3: 44
as Linsco/Private Ledger Corp.

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**DEFENDANTS**

Fidelity and Deposit Company of Maryland

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Baltimore
(IN U.S. PLAINTIFF CASES ONLY)

DEPUTY

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Amy B. Briggs, Esq.
Steefel, Levitt & Weiss
One Embarcadero Center, 30th Floor
San Francisco, CA 94111

ATTORNEYS (IF KNOWN)

'08 CV 0038 JAH BLM

BY FAX

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR
(For Diversity Cases Only)  PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)  28 U.S.C. Sec. 1332 - Claims for Breach of
Financial Institution Bond.

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23   DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  Docket Number _____

DATE
01/07/08

SIGNATURE OF ATTORNEY OF RECORD
Amy B. Briggs

Amy B. Briggs

# 146 186

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

$850   1/7/08

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 146186      — SR

## January 07, 2008
## 15:40:29

## Civ Fil Non-Pris

USAO #.: 08CV0038 CIV. FIL.
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC#3005779


**Total—> $350.00**


FROM: LPL FINANCIAL CORP. V.
      FIDELITY AND DEPOSIT CO.
      CIVIL FILING